The Chancellor.
The combination of facts, as gathered from the bill and answers, upon which, as it seems to me, the *405 present motion must be decided, are as follows. George Obert died, the bill says, in March, 1820, the answer says in 1821, intestate, seized of a farm of 120 acres; leaving four children him surviving, and live grandchildren, the children of a son who died in his life time. The complainant is one of the said five .grandchildren, and the defendant Peter G. Obert is another of the said grandchildren. After the death of the intestate, one of the five grandchildren died, unmarried and rvithout issue, by which the shares of the .complainant and the defendant Peter, .respectively, -Avere increased to a twentieth; and the bill states that, by purchases of other shares, -the complainant became entitled to six twentieths; the defendant Peter to eight twentietiis; and that George Obert is entitled to four twentieths, and each of two other grandchildren to one twentieth. The .defendant Peter administered; and on the 4th June, 1822, by .order of the orphans’ court of Middle-sex, sold the farm, for the payment of debts, to I). Smith. On the 5th,June, 1822, Smith conveyed the farm to the defendant Peter. On the 15th February, 1834, Peter conveyed 70 acres of the farm to one Slover, who took possession thereof and built a dwelling house and made other improvements thereon; and this tract of 70 acres, by mesne conveyances from Slover, became vested in the defendant Simpson, in February, 1839. Previous .to 1835, the precise time when does not appear, the defendant Peter mortgaged the farm to Ann Van Beuren. On the 19th October, 1842, a final decree for the sale of the premises under this mortgage was made, and, at the sheriff’s sale thereof, May 19th, 1843, the premises were bought by Simpson, for $495. In March, 1837, Peter rented 00 acres to George Hammell, and the complainant in this bill brought an ejectment against Hammell. Hammell appeared and defended. The consent rules were exchanged September, 1837. In December, 1842, a verdict for a twentieth part was obtained against Hammell in the said ejectment ; and in February, 1843, judgment was entered on the verdict, and a writ of possession Avas executed. The bill says that during the ejectment the complainant bought two other shares; hut it does not say at what time during the ejectment. The bill was filed and the injunction granted in February, 1844.
*406 The defendant Simpson says he is an innocent purchaser, for a valuable consideration, and ‘without notice of any such dormant claim as is set up-by. the complainant. The defendant Peter went into possession of the -whole farm, on getting his deed from Smith, and continued in possession of the whole, claiming title, till he sold the 70 acres to Slover-in 1834; and that has been held adversely ever since; and Peter remained in possession of the residue, by himself or his tenant, claiming adversely, till Simpson bought at the sheriff’s sale under the Fan Beuren mortgage, in 1S43; -which mortgage was given by Peter; and-.the title, as claimed adversely .against the heirs, is now all in Simpson, and Peter occupies under, him.
The first question is, -is the title of the-complainant to an interest in the whole farm, the premises of which he seeks partition, sufficiently established to-enable this.court to proceed with the partition, or to authorize the continuance of the injunction? The complainant in this suit, by ejectment against a tenant of 60 acres under Peter, recovered a judgment for a twentieth part of the 60 acres. The 70 acres had been sold by Peter in 1834; no ejectment -has been brought for that; and about twenty-two years have elapsed since the deed from Smith to Peter. If the verdict and judgment against Peter’s tenant of the 60 acres be equivalent to a verdict and judgment against Peter, it cannot settle the title as to the 70 acres. For aught that appears; 'Slo,ver was a purchaser of the 70 acres for a Valuable consideration' without notice; and at any rate Simpson, who holds by mesne conveyances from Slover, says, in his answer, that he is such a purchaser.
.Next, what amount of interest in the complainant in the 60 acres can be at all considered as settled by the ejectment against Peter’s tenant ? The bill says that the complainant, during the ejectment, bought other shares, and at the time of filing the bill was entitled to six twentieths. But those shares have been held adversely since 1822, and are still so held. The ejectment was commenced as early as . 1837, within about fifteen years from the commencement of the adverse possession; and cannot establish the complainant’s title in February, 1844, the time of filing the bill, to any interest in the 60 acres more than the twentieth part for which the verdict and judgment were render *407 ed. Besides, the bill does not eay at what time dining the ejectment the complainant bought other shares: it may have been after the lapse of twenty years.
The only title, then, in the complainant, which can be considered at all established by the ejectment, is to a twentieth part of sixty acres of the premises of which he seeks partition. The interest of Peter, or those claiming under him, is eight twentieths. If, then, the deed from Smith to Peter, and all the subsequent conveyances, could- be set aside¿ we should have the case of one tenant in common owning a twentieth, asking and obtaining an injunction against the owner of eight twentieths, in possession of the whole or of nineteen twentieths, from cutting any wood or timber during the pendency of a suit in this court for a partition instituted by the owner of the other twentieth.
But, under the case made by the bill and answer, the question whether such an injunction should be continued is still a • more serious question. In the first place, it appears, by the answer, that the dwelling house and other buildings on the premises were in a ruinous condition when Peter got the title claimed by him and entered into possession under it; and that he put new buildings on the premises, and improved the lands by manure, at an expense, altogether, of $2000, besides his own labor. It certainly could not be expected, under these circumstances, that the injunction, as prayed by the bill and granted restraining Peter from cutting any wood or timber, continued. The chancellor, when the motion was made, in October, 1844, to dissolve the injunction, modified it, by limiting it so as to restrain Peter from cutting timber not necessary for the ordinary use of the farm. This was eighteen months ago. No progress has since befen made in the partition suit; and the motion now is, to dissolve the injunction entirely.
The defendants say that they intended to-cut the wood and timber from two acres near the barn, and had commenced doing so when the injunction was served; and deny that this would be waste, and deny all intention, to commit waste. Would this be an irreparable injury to the complainant, or tend to prevent his getting his full twentieth, if the partition suit proceeds? An equitable partition may be made so- *408 as to'assign that portion of the' land on which improvements have' been made to the person who made them: 1 Green’s Ch. R. 341. And I see' no reason why the court could not! direct that, in' making the partition, the value of these two' acres proposed to be cut off should be estimated as it was with the wood and timber on'itas well as that the lands occupied by the' neW buildings-should be valued as it' was with the old buildings on it.-
In Elmer’s Dig. 383, sec. 19, it is provided, that on a division in any of the cases- under the statutes for partition, if any tenant in common, or person claiming under him; hath, before division; cut off any timber, or committed any waste or destruction on the premises, the'commissioners shall estimate the damage, and divide' the pr'emises so that such tenant shall be charged with it, and have'a share proportionably less in value.
There are, no doubt, special' cases in which an injunction Will be'granted between tenants in common, to stay waste, but the cases are rare, and the jurisdiction is sparingly exercised. In 3 Bro. Ch. Rep. 621, the chancellor said, he had no idea of an injunction to stay waste where the person applying for it is tenant in'common with the person in possession, who has therefore an equal title to the possession with him'; but it appearing in that case, that they were only equitable tenants in common, the' legal estate being in- a trustee; and that therefore the person committing the waste' Had no title to the possession; and it being sworn that the party cutting was insolvent; the chancellor granted the injunction. It may be remarked here, that the charges of insolvency made in the bill in this case, are fully denied by the answers;
In Hále v. Thomas, 7 Ves. 589, Ld. Eldon said, he never knew of an instance of an application to stay waste by one tenant in common against another; that a case of malicious destruction might be a ground; and in Tworl v. Tworl, 16 Ves. 128, the same chancellor said, that his experience did not furnish him with a single instance of an injunction between tenants in common; and that he had refused injunctions between tenants in common, except in special cases. The case before him, he said, was a special case, one of the tenants in common having become the occupying tenant of the other, and *409 having by that contract engaged, as to one moiety, to treat the land as an occupying tenant should treat it; and on this ground lie granted the injunction ; stating, expressly, in the order, that the defendant was occupying tenant to the plaintiff; and restraining him from committing any waste upon the premises which he held as such occupying tenant. This, he said, was a safe principle, and would, by its necessary operation, prevent the defendant from committing any waste. This ground, and that of destruction or insolvency, seem to be the special grounds on which the jurisdiction has been exerted. This last case was on a bill for partition, and motion for injunction.
The case of Hawley v. Clowes, 2 John. Ch. R. 122, which was a bill for partition and injunction to stay waste, was, probably, the case or the authority on which the chancellor, when a motion to dissolve was made before him eighteen months ago, retained the injunction in part, limiting it as before mentioned. In that case, the plaintiff and defendant owned the land as tenants in common, in equal undivided moieties; and there was no dispute about the title; and a motion was made to dissolve without answer, on the ground that one tenant in common cannot have an injunction- against another. The bill charged that the defendant was cutting down the timber, and threatening to persevere, and was sworn to; and there was no answer. The chancellor modified the injunction, confining it to timber not wanted for the necessary use of the farm. He said that the authorities admitted that an injunction- between tenants in common could be granted in special cases; as where the defendant was sworn to be insolvent, or where the waste was destructive to the estate, and not within the usual and legitimate exercise of enjoyment; and that he thought it fit that, pending a suit for partition, the tenant in common in possession should not bo permitted to strip the laud of its'timber. I think this principle of Chancellor Kent a safe one, but I cannot'think the case we are considering is, under the answers filed, within the principle.
It is proper to forbear from any remarks on the question of title.
Let the injunction be dissolved.